**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**FREDDIE L. WAGNER, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 25-1409**

**AMAZON.COM, INC. d/b/a RING**                          **SECTION: "G"(1)**

**ORDER AND REASONS**

Before the Court is Defendant Amazon.com, Inc.'s ("Defendant") "Motion to Dismiss Plaintiff's Amended Complaint."[1] In this litigation, *pro se* Plaintiff Freddie L. Wagner, Jr. ("Plaintiff") originally brought claims against Defendant for: (1) negligence; (2) misrepresentation; (3) breach of contract; and (4) violation of the Louisiana consumer protection statute.[2] In the Amended Complaint, Plaintiff asserts a claim pursuant to the Louisiana Product Liability Act ("LPLA").[3] In the motion, Defendant argues that Plaintiff has not alleged a legally viable claim under the LPLA.[4] Plaintiff opposes the motion.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the Motion to Dismiss.

**I. Background**

According to the Amended Complaint, Plaintiff purchased a Ring home security device (the "Device") in March 2025.[6] The Device is manufactured and sold by Ring, a company that is

---

[1] Rec. Doc. 35.

[2] Rec. Doc. 2.

[3] Rec. Doc. 33.

[4] Rec. Doc. 35-1.

[5] Rec. Doc. 36.

[6] Rec. Doc. 33 at 2.

owned by Defendant.[7] Plaintiff alleges that the Device was working well initially, but later began to malfunction, allegedly causing connection failures, unexpected logouts, and false triggers.[8] Specifically, Plaintiff alleges that on June 2 and 3, 2025, he received multiple "motion alerts" while he was not present at his property.[9] Plaintiff claims that these notifications were inconsistent with the Device's prior performance.[10] Plaintiff alleges that on June 3, 2025, the alarm system was triggered, and he attempted to disable the system through the Ring application.[11] Plaintiff claims that he was unable to disable the system through the application, so he disabled it manually.[12] Plaintiff further claims that during the event that occurred on June 3, 2025, he did not receive any push notifications or alerts from the Ring application that the alarm was triggered.[13] Plaintiff claims that he reached out to Ring customer service who allegedly assured him there was no unauthorized access or system compromise.[14] Plaintiff claims that he continued to experience application interference and system failures, and he was denied proper support.[15]

On June 5, 2025, Plaintiff filed a Petition for Damages against Defendant in the 21st Judicial District Court for the Parish of Tangipahoa, asserting claims for "negligence, misrepresentation, breach of contract, and violation of the Louisiana consumer protection

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

statute."[16] Plaintiff is seeking compensatory damages, emotional distress damages, and injunctive relief.[17]

On July 10, 2025, Defendant removed the case to this Court on the basis of diversity jurisdiction.[18] On August 7, 2025, Defendant filed an initial motion to dismiss.[19] That same day, Plaintiff filed an opposition to the motion.[20] On August 19, 2025, Defendant filed a reply brief in further support of the motion.[21] On August 20, 2025, Plaintiff filed a sur-reply brief in further opposition to the motion.[22]

On December 23, 2025, the Court denied Defendant's first Motion to Dismiss, and granted Plaintiff leave to amend the complaint by January 5, 2026.[23] The Court found Plaintiff's claims for negligence, misrepresentation, breach of contract, and violation of the Louisiana Unfair Trade Practices Act are subsumed by the LPLA because they relate to the damage he allegedly suffered from Defendant's product.[24] The Court also found that the Complaint did not allege any facts that, if taken as true, state a valid claim under the LPLA.[25] Because Plaintiff is proceeding *pro se* and

---

[16] Rec. Doc. 2-1 at 5.

[17] *Id.*

[18] Rec. Doc. 2.

[19] Rec. Doc. 20.

[20] Rec. Doc. 22.

[21] Rec. Doc. 25.

[22] Rec. Doc. 26.

[23] Rec. Doc. 30.

[24] *Id.* at 10

[25] *Id.*

had not previously been granted leave to amend the Complaint, the Court granted Plaintiff leave to file an Amended Complaint to clarify the legal and factual basis for his claims under the LPLA.[26]

On January 13, 2026, Plaintiff filed an Amended Complaint.[27] On January 27, 2026, Defendant filed the instant "Motion to Dismiss Plaintiff's Amended Complaint."[28] On February 1, 2026, Plaintiff filed an opposition to the motion.[29] On February 16, 2026, Defendant filed a reply brief in further support of the motion.[30] On February 27, 2026, Plaintiff was granted leave of Court to file a sur-reply brief in further opposition to the motion.[31]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of the Motion to Dismiss*

Defendant moves the Court to dismiss this case because Plaintiff alleges no facts to support a claim under the LPLA.[32] Specifically, Defendant alleges that Plaintiff fails to allege facts to show that the Device was unreasonably dangerous in design.[33] Defendant argues that Plaintiff did not identify any specific design feature of the Device that rendered it unreasonably dangerous.[34] Defendant further asserts that Plaintiff did not offer an alternative design, which is a requirement under the LPLA.[35] Defendant avers that Plaintiff disclaimed any defect in the "hardware itself,"

---

[26] *Id.* at 11.

[27] Rec. Doc. 33.

[28] Rec. Doc. 35.

[29] Rec. Doc. 36.

[30] Rec. Doc. 37.

[31] Rec. Doc. 41.

[32] Rec. Doc. 35-1 at 4.

[33] *Id.* at 5.

[34] *Id.*

[35] *Id.*

4

and instead, alleges defects in the administration and after-the-fact interference, which is not a design defect that existed "at the time the product left" Defendant's control.[36]

Additionally, Defendant asserts that Plaintiff offers no evidence that the Device does not conform to the express warranty.[37] Defendant argues that Plaintiff's claim that he bought the Device in reliance on Defendant's express warranty is unfounded, because he does not identify any language that promises to provide "reliable monitoring, alerts, and alarm functionality."[38] Defendant further asserts that Plaintiff failed to identify any damages that are sufficient to state claim under the LPLA, and has failed to state an adequate claim for injunctive relief.[39]

### B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiff argues that the LPLA does not exclusively apply to this case, as the Device was not unreasonably dangerous at the time it left Defendant's control.[40] Instead, Plaintiff asserts, that the danger arose after the sale, from the administrative and interference issues.[41] Additionally, Plaintiff claims that because of the alleged interference he has suffered economic and non-economic harm and is therefore entitled to damages.[42] Plaintiff also asserts that Defendant's stance that damages for emotional distress are insufficient under the LPLA, presupposes the applicability of the LPLA, and dismissal on those grounds is premature.[43] Lastly,

---

[36] *Id.* at 7.

[37] *Id.* at 8.

[38] *Id.*

[39] *Id.* at 9–10.

[40] Rec. Doc. 36 at 4.

[41] *Id.*

[42] *Id.*

[43] *Id.*

Plaintiff claims that his request for injunctive relief is viable and cannot be decided on a motion to dismiss.[44]

**C.     *Defendant's Arguments in Further Support of the Motion to Dismiss***

In reply, Defendant contends that Plaintiff's assertion that his claim is not governed by the LPLA is the exact argument that the Court rejected in Defendant's first Motion to Dismiss.[45] Specifically, Defendant avers that Plaintiff acknowledges in the Amended Complaint that he is bringing this action under the LPLA, and therefore, the arguments in the Amended Complaint control, not the arguments brought up for the first time in the Opposition.[46] Thus, Defendant claims, since Plaintiff has failed to address Defendant's arguments under the framework of the LPLA and its required elements, the Amended Complaint has failed to state a claim and dismissal is warranted.[47] Lastly, Defendant submits that Plaintiff's request for injunctive relief fails because he offered no facts to meet the required elements.[48]

**D.     *Plaintiff's Arguments in Further Opposition of the Motion to Dismiss***

In the sur-reply brief, Plaintiff asserts that Defendant mischaracterizes the Amended Complaint, as he does not attempt to forego the framework of the LPLA, and instead, claims that the Device was unreasonably dangerous in design.[49] Specifically, Plaintiff claims that the alleged dangerous design defects arose during anticipated use, such as, loss of user control, irregular account access, login history anomalies, and failure to send critical push notifications during alarm

---

[44] *Id.*

[45] Rec. Doc. 37 at 1.

[46] *Id.* at 2.

[47] *Id.* at 3.

[48] *Id.* at 4.

[49] Rec. Doc. 41 at 3.

events.[50] Thus, Plaintiff asserts that, Defendant's claim that he has alleged "zero facts" under the LPLA is incorrect, and that he has stated a plausible claim under the LPLA.[51]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[52] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[53] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[54] "Factual allegations must be enough to raise a right to relief above the speculative level."[55] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[56]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[57] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[58] "While legal conclusions

---

[50] *Id*. at 4.

[51] *Id.*

[52] Fed. R. Civ. P. 12(b)(6).

[53] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[55] *Twombly*, 550 U.S. at 555.

[56] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[57] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[58] *Iqbal*, 556 U.S. at 678–79.

can provide the framework of a complaint, they must be supported by factual allegations."[59] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[60] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[61] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[62] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[63] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[64]

## IV. Analysis

Defendant moves the Court to dismiss this case because it asserts that Plaintiff has failed to allege any facts to support a claim under the LPLA.[65] In the Amended Complaint, Plaintiff asserts that the Device was unreasonably dangerous in design and fails to conform to the express warranty provided by Defendant.[66]

---

[59] *Id.* at 679.

[60] *Id.* at 678.

[61] *Id.*

[62] *Id.*

[63] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[64] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[65] Rec. Doc. 35-1 at 1.

[66] Rec. Doc. 33 at 2.

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."[67] A plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."[68] In order to prevail on a LPLA claim, the plaintiff must establish "(1) that the defendant is a manufacturer of the product; (2) that [the plaintiff's] damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that [the plaintiff's] damage arose from a reasonably anticipated use of the product by the claimant or someone else."[69] A manufacturer is "[a] person or entity who is in the business of manufacturing a product for placement into a trade or commerce."[70] Additionally, "[a] product is unreasonably dangerous if and only if" it is unreasonably dangerous in construction or composition, in design, because an adequate warning about the product has not been provided, or because it does not conform to an express warranty of the manufacturer about the product.[71]

Importantly,

> [a] product is unreasonably dangerous in design if, *at the time the product left its manufacturer's control*: (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage

---

[67] La. Rev. Stat. § 9:2800.52.

[68] *Id.*

[69] *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing La. Rev. Stat. § 9:2800.54).

[70] La. Rev. Stat. § 9:2800.53.

[71] La. Rev. Stat. § 9:2800.54.

when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[72]

Additionally, a "product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."[73]

Plaintiff claims that Defendant is the manufacturer of the Device, which Plaintiff alleges is unreasonably dangerous because it relied on centralized software that interfered with security functions and prohibited user control.[74] Additionally, Plaintiff asserts that a reasonably anticipated use of a home security device includes monitoring and user control. Plaintiff further claims that the risks of the design of the Device outweigh the utility of the product.

Plaintiff offers facts to support the assertion that the unreasonably dangerous characteristic of the Device was present at the time it left Defendant's control. Although the Amended Complaint states that "Plaintiff does not allege that the Ring System hardware itself," and instead, alleges that "administrative software, or backend interference" caused the malfunctions, suggesting that the defect could have existed at the time the product left Defendant's control.[75] On the other hand, Plaintiff also asserted in the Opposition that the Device was not unreasonably dangerous at the time it left Defendant's care.[76] In the Amended Complaint Plaintiff asserts that:

> The Ring System was unreasonably dangerous in design because it relies on centralized software and cloud controls that can disable or interfere with core security functions, including alarms and

---

[72] La. Rev. Stat. § 9:2800.56 (emphasis added).

[73] La. Rev. Stat. § 9:2800.58.

[74] Rec. Doc 36 at 4.

[75] Rec. Doc 33 at 3.

[76] Rec. Doc 36 at 1.

notifications, without adequate safeguards to ensure reliability, redundancy, or user control.

A reasonably anticipated use of a home security system includes continuous monitoring, timely alerts, and the ability for the user to control and disable alarms through the provided application.

The design of the Ring System created a foreseeable risk that failures in Amazon-controlled software or authentication systems would render the device nonfunctional during critical security events, thereby defeating the product's essential safety purpose.

The risks posed by this design outweighed the utility of the product, particularly where alternative designs could provide local control, redundancy, or fail-safe mechanisms.[77]

The Louisiana Second Circuit Court of Appeal has recognized that a product is unreasonably dangerous in design:

(a) if a reasonable person would conclude that the danger of the product, whether foreseeable or not, outweighs the utility of the product; (b) if alternative products were available to serve the same needs or desires with less risk of harm; or (c) if a feasible way existed to design the same product with less harmful consequences.[78]

Louisiana Revised Statute § 9:2800.56 requires a claimant to "show that the alternative design (which is also feasible and would avert the injury) withstands a risk/utility analysis."[79]

Here, Plaintiff suggests that better software and backend services would have prevented his alleged injuries. Plaintiff's alleged injuries include "loss of security and reliability, emotional distress, anxiety related to home safety, time and expense spent troubleshooting and contacting support, and loss of the benefit of the bargain."[80]

---

[77] Rec. Doc. 33 at 4.

[78] *Clark v. Jesuit High Sch. New Orleans*, 96-1307 (La. App. 4 Cir. 12/27/96), 686 So. 2d 998, 1003.

[79] *Berry v. Commercial Union Ins. Co.*, 565 So. 2d 487, 492 (La. App. 2 Cir. 1990).

[80] Rec. Doc. 33 at 4.

11

Further, Plaintiff asserts that Defendant expressly warranted, through marketing materials and user agreements, that it would provide reliable security monitoring and functionality, and that he relied on this express warranty. An express warranty is defined in Louisiana Revised Statute § 9:2800.53(6):

> "Express warranty" means a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

To prevail on an express warranty claim, a plaintiff must show: "(1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue."[81] "Put another way, '[t]he plaintiff must allege the content of the warranty and explain how the warranty was not true.'"[82] While Defendant argues that Plaintiff fails to identify an express warranty to which the Ring Product failed to conform, it is unclear whether it is necessary for Plaintiff to cite a specific express warranty at this stage.[83] Whether Plaintiff can identify specific warranty language and prove reliance is a matter better suited for summary judgment.

---

[81] *Tuminello v. ABC Ins. Co.*, 2023-446 (La. App. 3 Cir. 2/28/24), 381 So. 3d 320, 341 (citing *Guidry v. Janssen Pharmaceuticals, Inc.*, 206 F. Supp. 3d 1187, 1199 (E.D. La. 2016)).

[82] *Id.* (quoting *Donald v. Astrazeneca Pharmaceuticals, LP*, 16-17753, 2017 WL 1079186, at *4 (E.D. La. Mar. 22, 2017).

[83] *See Baudin v. AstraZeneca Pharms. LP*, 413 F. Supp. 3d 498, 511 (M.D. La. 2019) ("it is unnecessary for Plaintiff to cite a specific express warranty."); but see *Donald v. Astrazeneca Pharm., LP,* 2017 WL 1079186 (E.D. La. Mar. 22, 2017) ("The plaintiff must 'specify the warranty in question.'").

Here Plaintiff is proceeding *pro se,* and his allegations must be construed liberally. The Court has identified analogous cases, including *White v. Ring, LLC*[84] and *Lopez v. Ring, LLC,*[85] involving alleged malfunctioning Ring home security devices in which plaintiffs asserted breach of express warranty claims. Although those courts compelled arbitration and did not reach the merits, the existence of such claims in comparable litigation underscores that Plaintiff's theory is at least plausible and could be more appropriately resolved after discovery rather than at the motion to dismiss stage.

"When the cause of action requires specific elements to be proven, the plausibility standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."[86] In light of the similar breach of express warranty claims previously asserted by other plaintiffs concerning the same product, and the liberal construction afforded to *pro se* pleadings,[87] the Court finds that discovery between the parties is warranted to elucidate whether Plaintiff's claims are factually supported.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss[88] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this  3rd  day of April, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[84] 22-6909, 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023).

[85] 21-2317, 2022 WL 22970787 (C.D. Ill. Oct. 31, 2022).

[86] *Flagg v. Stryker Corp.,* 647 F. App'x 314, 316 (5th Cir. 2016).

[87] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir.2012) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002).

[88] Rec. Doc. 35.

13